CASE 91—PETITION ORDINARY—FEBRUARY 27.

# Commonwealth v. Tate, &c.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. JOINDER OF DEFENDANTS—SAME SURETIES IN SEPARATE OBLIGATIONS SUED IN ONE ACTION.—A plaintiff holding two or more separate obligations, payable to himself, with the same principal and sureties to each, may sue upon all the obligations in one action.

2. SAME.—When the principal in each of several obligations is the same, and the sureties in each are, in part, the same, the plaintiff may sue upon all the obligations in one action, uniting, as defendants, the sureties that are common to all the obligations, and omitting such as are upon one obligation and not upon another, provided all the obligations are executed to the same person, and are for the performance of the same class of duties.

3. SAME.—Where two or more obligations are sued upon in one action, each instrument should be set out in a separate paragraph, although the sureties sued are common to all. But where the obligations sued upon are for the performance of the duties of a public officer for different terms, and the plaintiff is unable to state the amount of the defalcation for each term separately, it is sufficient to set out the separate obligations in separate paragraphs, and then state the aggregate amount of the defalcation, with an explanation as to why the amount was left blank in the separate paragraphs.

4. SAME.—A creditor may pursue any remedy which the law gives him against a surety, although the pursuit of the remedy may cause incidental inconvenience and hardship, and consequent loss, to the surety, in reference to his remedies against his co-sureties. The creditor can not be required to pursue such a course as will preserve to the surety an easy remedy against his co-sureties.

5. PLEADING—MOTION TO MAKE MORE SPECIFIC.—A mere defect of form, and not of substance, in a pleading, should be corrected by motion to make more specific, and not by demurrer.

6. CASE ADJUDGED.—In an action by the Commonwealth, upon bonds of the State Treasurer for different terms, only the sureties common to all the bonds were united as defendants, all others being omitted. The separate bonds were set out in separate paragraphs, in which the amount of the defalcation for each term was left blank. Another paragraph was then added, reiterating substantially the allegations of the preceding paragraphs, with an additional statement, giving the aggregate amount of the defalcation, and explaining that it was impossible to state what part of the defalcation occurred during any

one term. *Held*—That the only mistake of the pleader consisted in having the last paragraph, which should have been simply a continuation of the preceding paragraphs, and not a separate paragraph; but this was not ground of demurrer.

THOMAS H. HINES for appellant.

There was no misjoinder of causes of action. The provisions of the Civil Code of Practice clearly establish the right to join parties and causes of action, as in this case. (Civil Code, secs. 26, 27, 83.)

W. LINDSAY, D. W. LINDSEY, A. DUVALL, F. CHINN, J. W RODMAN and W. A. SUDDUTH for appellees.

1. The statutes enjoining upon the Auditor and Secretary of State the duty of examining the accounts of the Treasurer, upon the expiration of his term, stating the same, counting the money in the Treasury, &c., were never intended to require that the Treasurer should be present when the Auditor and Secretary performed these duties (Gen. Stats., chap. 108, sec. 4); and the fact that the Treasurer absented himself from his office, and postponed a meeting with the Auditor and Secretary from time to time, is no excuse for the failure of those officers to perform that duty; and their failure to do so in this case should not relieve the Commonwealth of the necessity of alleging specifically what passed to Tate as his own successor the 1st Monday in January, 1888; how much money he received as Treasurer; how much money he paid out up to the time he left, and how much there was in the Treasury at the time he left.

2. Even if appellees were all the sureties that were on both of the bonds sued on, the Commonwealth would be required to sue separately on each bond, and allege and prove a breach of each bond. (Moxley, Adm'r, v. Moxley, 2 Met., 312; Chitty's Pleadings, 332, 334; Murfree on Official Bonds, sec. 639; Howard v. Chiles, 8 B. M., 378; Hord v. Trimble, 3 Mar., 534; Ficklin v. Clay, 1 Mar., 64; Kessinger v. Munford, 1 Mar., 256; Pollard v. Taylor, 1 Bibb, 465; 2 Met., 312.)

3. A surety has a right to contribution against his co-surety, and nothing can be done by the obligee in the contract to deprive the surety of his right to contribution.

To hold the third paragraph of the petition good would deprive appellees of their right to contribution from their co-sureties, who are not sued.

4. If an officer has been re-elected or re-appointed, the sureties are only liable for defaults of their principals committed during the term of office for which they became his sureties. (Vivian v. Otis, &c., 1 Am. Rep., 199; s. c., 24 Wis., 518; Bissell v. Saxton, 66 N. Y., 55; Myers v. United States, 1 McLean, 493; County of Mahaska v. Ingalls, 16 Iowa, 81; 5 Peters, 373; Farrar v. United States, 5

Peters, 389; United States v. Boyd, 15 Peters, 187; Porter v. Stan-- ley, 47 Me., 515; 5 Howard, 50; Treasurer of Vermont v. Mann,. 80 Am. Dec., 688; Moss v. State, 47 Am. Dec., 116; Peoples v. Shannon, 10 Ill. App., 355; Hassell v. Long, 2 Maule & S., 370; Kingston, &c., Co. v. Clark, 33 Barb., 196.)

A surety has the right to stand upon the very terms of his con- tract. (First National Bank v. Gerke, 6 Am. St. Rep., 453.)

There is always a presumption in favor of every public officer that he has discharged his duty according to law. The onus, therefore, is upon the party charging him with a default to prove it; and the bur- den is not shifted to the officer's side of the scale until proof is made of a *prima facie* case against him. The sureties of an officer are al- ways entitled to the benefit of this rule. (Murfree on Official Bonds, sec. 722; United States v. Earhard, 4 Sawy., C. C., 245; Bruce v. United States, 17 How., 437; Alvord v. United States, 13 Blatchford, C. C., 279.)

**5.** The section of the Code allowing allegations of facts alternatively only applies when a party has *one cause* of action, but which he can sus-- tain in two ways, or by two statements of facts that may be in con-- flict with the rules of pleading as inconsistent with one another. There the Code permits him, in order to avoid that rule, to allege that one or the other of these facts going to sustain the same cause of action is true, but he does not know which of them is true. (Civil Code, sec. 113, subsec. 4; Muldraugh's Hill, Campbellsville and Columbia Turnpike Co. v. Maupin, 79 Ky., 102.)

In the case at bar the plaintiff applies the facts alleged alterna- tively to two separate and·distinct causes of action.

**6.** While a pleading may contain statements of as many causes of action as there may be grounds for (Civil Code, sec. 113, subsec. 2), yet if there be more than one cause of action, each must be distinctly stated in a separate, numbered paragraph. (Civil Code, sec. 113, subsec. 3.)

The fact is made manifest by plaintiff's pleading either that there was no defalcation under either bond, or else that those who represent the Commonwealth are not willing to undergo the necessary labor to so far ascertain the facts as to be able to state the cause or causes of action in a traversable form.

**7.** It was the duty of plaintiff to allege what was actually on hand in the Treasury on the 20th of March, 1888, so as to show what, if any, sum was appropriated by him to his own use. The allegation of default in the sum of one hundred and sixty-two thousand two hundred and eighty-six dollars and eighty-one cents is a conclusion of law.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The facts relating to the election of James W. Tate to the office of Treasurer of this State, his repeated

elections to said office, his suspension from office, impeachment and removal, are stated in the opinion in the case of James W. Tate and his sureties on his official bond for the term of 1882 and 1883, this day rendered. (Commonwealth v. Tate, &c., *ante*, 587.) This action is against his sureties on his official bonds for the two terms—one for 1886 and 1887, the other for 1888 and 1889—to recover the amount of said Tate's defalcations for either or both of said years.

The appellant, in paragraphs one and two, set out a cause of action on each bond, and filed a copy of the same with each paragraph, except the amount of defalcation occurring in each term was left blank. The third paragraph reiterates substantially all the allegations of the first and second paragraphs, together with the additional statement that the amount of defalcation occurring in said two terms was one hundred and sixty-two thousand two hundred and eighty-six dollars and eighty-one cents, and that the appellant could not tell what part of said defalcation occurred during the term of 1886 and 1887, or what part occurred in the term of 1888, but it did occur during said terms; but the fact as to the amount converted by Tate during each term was peculiarly within his knowledge.

The 26th section of the Civil Code provides: "Persons severally liable upon the same contract, and parties to bills of exchange, to promissory notes placed upon the footing of bills of exchange, or to common orders and checks, and *sureties on the same, or separate instruments, may all, or any of them, be in-*

*cluded in the same action at the plaintiff's option."*

According to this provision of the Code, it seems that if the plaintiff holds two or more separate obligations, payable to himself, and the same sureties are on each obligation, all, at the option of the plaintiff, may be sued in the same action. But where the principal is the same, and the sureties are, in part, the same to each instrument, there also can be no doubt of the plaintiff's right to include those that are the same to each instrument in the same action. The Code expressly provides that he may sue any of them at his option. Of course, each obligation should be for the performance of the same class of duties. While it is true that they all may be included in the same action, yet, where there are two or more instruments, although the sureties sued are the same, each instrument should be set out in a separate paragraph, in order to show the contract by which they became severally bound. Here each bond is set out in a separate paragraph, and the same sureties on each bond are sued. The sureties that are on one bond and not on the other are not sued. The appellant, as said, had a right to include these in the same action. Whatever defalcation occurred during said two terms, all of the sureties sued being the same on both bonds, are equally liable to the appellant for the whole amount, whether all of the defalcation occurred during either term or partly in both; and, as said, the foundation of the necessity of suing on each covenant is to show how they became bound; but the respective obligations make them severally bound for the entire defalcation that

occurred during said two terms, and the appellant has the perfect right to sue and collect this money off of all or any one of them. In suing and collecting its debts off of any one of them, it is not bound to so shape its suit as to preserve or facilitate appellees' remedies against their unsued co-sureties, or against each other. It is true that it can not do any thing to destroy the appellees' remedies against their co-sureties; but whatever the law authorizes it to do in the way of forcing the collection of its debt, although the pursuit of the remedy may cause incidental inconvenience and hardship and consequent loss to the parties sued in reference to their remedies against their unsued co-sureties, or in reference to each other, it has the perfect right to do, else the law would not have given it such remedy. It is its debt that it is trying to collect by such means as the law gives. That law does not require it to pursue such a course as to preserve an easy remedy against the appellees' co-sureties. Their remedy against their co-sureties grows out of equities wholly independent of the appellant, and about which it has no concern whatever, except to do nothing that will impair that right, save what may incidentally grow out of the pursuit of its remedies.

Now, the petition shows, on its face, a cause of action against the appellees. The first and second paragraphs are defective only in not stating the amount of defalcation occurring during the term for which the bond was given. They both say that there was a conversion during each term; but the amount is left blank. The third paragraph says that, during

said two terms, the said amount converted was upwards of one hundred and sixty-two thousand dollars. The appellees are each bound to the appellant for this entire sum, the recovery of which the appellant is alone interested in looking after. As to the equities of the appellees, in reference to contribution among each other, or in reference to contribution from the unsued co-sureties, the appellant is not one whit concerned. Its money is all it wants, and the appellees agreed to pay it. Suppose that the appellant's petition, by being in three paragraphs, is informal or defective by reason thereof; but, nevertheless, taken all and all, states a cause of action, and it certainly does, should the appellant be turned out of court on demurrer?

Pomeroy on Remedies, &c., section 549, says: "The true doctrine to be gathered from all the cases is, that if the substantial facts which constitute a cause of action are stated in a complaint or petition, or can be inferred by reasonable intendment from the matters which are set forth, although the allegations of these facts are imperfect, incomplete and defective, such insufficiency pertaining, however, to the form rather than to the substance, the proper mode of correction is not by demurrer, nor by excluding evidence at the trial, but by a motion before trial to make the averments more definite and certain by amendment."

Here, as before said, the petition, in the three paragraphs, set forth a cause of action against each one of the appellees for the full amount claimed. The first and second paragraphs were proper, as showing the respective obligations by which the appellees each

became liable for the entire sum, and they are only liable for the entire sum by virtue of their being on each bond, otherwise the parties to each bond would only be liable for the defalcation that occurred during the term that such bond covered. Then, as the appellees were severally liable on each bond for the entire defalcation that occurred during the two terms, and as that liability required two paragraphs to set it forth, the only error consisted in the fact of having the third paragraph. Said paragraph should have been simply an addendum or continuation of the first and second paragraphs, and explaining why the respective amounts of Tate's conversion or defalcation in each was left blank. But it is said that the Code only authorizes a party to allege alternatively the existence of one or another fact in case either constitutes the same cause of action. If we concede this interpretation of the Code to be correct, then the appellees are confronted with the fact that, while there are two causes of action, each appellee is liable for the whole sum claimed. If the entire defalcation, if any, had occurred in either term, the appellees would have been liable for it; but the defalcation was scattered over two terms, and appellees equally are liable for it. In either case, as aforesaid, it constitutes but one liability. As to the question of contribution, the appellees will have to look out for themselves. The appellant is, under the law, entitled to coerce the whole amount of the debt out of any one or all of them, and it is not bound to so shape its pleading, or to so shape its allegations, as to make the appellees' right to

contribution easy, or appear, as to the amount, of record.

Upon the return of the cause, the appellant should be allowed to amend its petition in conformity with the foregoing views.

The judgment is reversed, with directions for further proceedings consistent with this opinion.